**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| WHITE RIVER MARINE GROUP, L.L.C. and ) <br> BASS PRO INTELLECTUAL PROPERTY, ) <br> L.L.C., ) <br> ) <br>             Plaintiff, ) <br> ) <br>    v. ) <br> ) <br> GEARLAUNCH, INC. and THATCHER ) <br> CLAFLIN SPRING, ) <br> ) <br>         Defendants. ) | CASE NO. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs White River Marine Group, L.L.C. ("White River") and Bass Pro Intellectual Property, L.L.C. ("Bass Pro IP") (collectively, "Plaintiffs"), by and through their undersigned counsel, allege the following for their Complaint against Defendants GearLaunch, Inc. and Thatcher Claflin Spring (collectively, "Defendants" or "GearLaunch"):

## NATURE OF THE ACTION

1.      White River revolutionized the marine industry and introduced the world's first professionally rigged and nationally marketed boat, motor, and trailer packages. At least as early as 1978, White River's Tracker® Boats became, and have remained, the number one selling fishing boat brand in the United States. To this day, White River is the world's largest fishing and recreational boat builder by volume, and has curated a collection of famous brands related to boating, angling, and off-roading adventures. White River's product names, logos, designs, symbols, trade dress, and other source-identifying indicia serve as valuable trademarks to White

River, and their value remains strong due to White River's reputation as the industry leader, customer goodwill, and commitment to product quality and innovation.

2.     Bass Pro IP is the owner of the BASS PRO SHOPS® trademark registrations and logos. Johnny Morris founded Bass Pro Shops in 1972 by selling fishing tackle in the back of his father's store. Since its founding, Bass Pro Shops has grown to become North America's premier outdoor and conservation company, operating nearly 200 retail stores and marine centers that welcome over 200 million visitors annually.  The company's name, logo, design, color schemes, symbols, trade dress, and other source-identifying indicia serve as valuable trademarks, and their value remains strong due to the company's nationwide reputation, customer goodwill, and commitment to quality products and customer experiences.

3.     Both White River and Bass Pro IP have invested heavily in their respective trademarks, many of which are federally registered.  Together, Plaintiffs own some of the most well-recognized trademarks in the North American outdoors market.

4.     This action stems from Defendants' systematic disregard and habitual violations of White River and Bass Pro IP's intellectual property rights.  Over the past year, Defendants have continually promoted counterfeit goods that Defendants have attempted to manufacture, sell, and deliver to customers across the United States that infringe Plaintiff's famous trademarks.  Despite Plaintiff's constant policing and take-down notices, Defendants have refused to cease their counterfeiting operations and routinely launch new websites with counterfeit and infringing products.

5.     As set forth herein, Defendants knowingly provide a ready-made platform that repeatedly tramples on Plaintiff's intellectual property rights.  Despite knowing that Plaintiffs have repeatedly objected to Defendants' manufacture and sale of products incorporating Plaintiff's

trademarks, Defendants willfully continue to advertise, promote, manufacture, offer to sell, distribute, and sell counterfeit goods across the United States via countless websites owned, controlled by, or affiliated with Defendants.

6. Because Defendants have used and knowingly facilitated use by third parties of substantially indistinguishable and confusingly similar imitations of Plaintiff's famous and distinctive trademarks and trade dress, Plaintiffs bring this action at law and in equity for: (1) counterfeiting under Section 32 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114; (2) direct and contributory trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; (3) direct and contributory unfair competition, false representation, and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) direct and contributory trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (5) trademark dilution under the laws of the State of Missouri, Mo. Rev. Stat. §§ 417.056 and 417.061; and (6) trademark infringement and unfair competition in violation of the laws of several states, including the State of Missouri.

## THE PARTIES

7. Plaintiff White River Marine Group, L.L.C. is a limited liability company organized and existing under the laws of the State of Missouri and has its principal place of business at 2500 East Kearney, Springfield, Missouri 65898.

8. Plaintiff Bass Pro Intellectual Property, L.L.C. is a limited liability company organized and existing under the laws of the State of Missouri and has its principal place of business at 2500 East Kearney, Springfield, Missouri 65898.

9. On information and belief, Defendant GearLaunch, Inc. is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business at 5570 W. 1730 S., Suite 900, Salt Lake City, Utah 84104.

10. On information and belief, Defendant Thatcher Claflin Spring is an individual who is the chief executive officer of GearLaunch, resides in Salt Lake City, Utah, and who knowingly authorized, directed, and/or substantially participated in the infringing activities described in this complaint.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Plaintiffs' related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

12. This Court has personal jurisdiction because, on information and belief, Defendants: (1) engage in continuous and systematic business activities in this Judicial District, such as distributing, offering for sale, and selling goods that infringe Plaintiff's intellectual property within the State of Missouri; (2) regularly conduct business in Missouri and this Judicial District; (3) have purposely directed substantial activities at the residents of Missouri and this Judicial District by means of web sites directed herein to derive substantial revenue from interstate commerce; (4) have committed tortious acts (namely, the accused acts described herein) directed at persons located in the State of Missouri and this Judicial District; and/or (5) have otherwise made or established contacts with the State of Missouri sufficient to permit the exercise of personal jurisdiction.

13. This Court also has personal jurisdiction over Defendants pursuant to Mo. Rev. Stat. § 506.500 because, on information and belief, Defendants have transacted business within the State of Missouri, and committed tortious acts within the State of Missouri.

14. Venue is proper in this Judicial District pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this Judicial

District and all of the intellectual property rights involved in this action are owned by Plaintiffs who are situated in this Judicial District.

<u>**FACTUAL ALLEGATIONS**</u>

**A. Plaintiffs' Businesses and Their Famous Marks**

15.     Plaintiffs are world-famous outdoors and boating companies with a wide variety of products, including apparel and merchandise.

16.     Since the 1970s, Plaintiffs have developed and used word marks, design marks, logos, and/or trade dress elements—including color schemes, stylizations, logos, designs, and other indicia—to identify and distinguish their respective goods and services. These protected indicia, collectively referred to as "Plaintiffs' Marks," and the goodwill in the marketplace that Plaintiffs' Marks represent, are extremely valuable.

17.     Representative examples of Plaintiffs' Marks are listed and depicted in **Exhibit 1**, including each mark's corresponding federal registration(s) and/or common law trademark rights. Also included are links to representative authorized merchandise websites for each of Plaintiffs' Marks included in **Exhibit 1**. In addition, Bass Pro IP owns a Missouri state trademark registration for the words "Bass Pro Shops." A copy of the certificate of registration from the Missouri Secretary of State for this mark is attached to this Complaint as **Exhibit 2**.[1] Plaintiffs Marks, as used in this Complaint, refers to all of the marks listed in **Exhibit 1** and **Exhibit 2**.

18.     In addition, Plaintiffs license the rights to use Plaintiffs' Marks to third parties for use in connection with authorized merchandising programs featuring a wide variety of goods, including, without limitation, clothing and accessory products. Plaintiffs' licensing agreements

---

[1]  Also included in **Exhibit 2** is a copy of Bass Pro Trademarks, L.L.C.'s (the original owner of the state trademark) Amended Articles of Organization filed on February 25, 2008 showing that its name had been changed to Bass Pro Intellectual Property, L.L.C.

with third parties are subject to rigorous quality control and supervision to ensure that officially licensed products bearing Plaintiffs' Marks are of the highest quality and thereby consistent with Plaintiffs' own goods or services offered under Plaintiffs' Marks.

19.     Plaintiffs, themselves or through their licensees, have made exclusive use of Plaintiffs' Marks for years on their products, including merchandise and apparel, that have been sold nationwide, including in brick and mortar retail locations, dealerships, and online.  Official merchandise bearing Plaintiffs' Marks account for millions of dollars in sales annually.

20.     Plaintiffs' Marks are famous in the marketplace and widely recognized by consumers as associated with Plaintiffs' products and businesses.

21.     As a result of Plaintiffs' widespread and extensive use, promotion, advertisement, and licensing of Plaintiffs' Marks, and the public's recognition that Plaintiffs' Marks are the primary brand identifiers of Plaintiff's businesses and products, Plaintiffs' Marks are well known, famous, and possess significant goodwill of great value to Plaintiffs.

**B.  Defendants' Business**

22.     On information and belief, GearLaunch was founded in 2013 and offers a one-stop shop for building and growing an online e-commerce business that sells merchandise incorporating an individual's design, such as printed designs on apparel and coffee mugs.

23.     GearLaunch's website—available at www.gearlaunch.com—confirms that GearLaunch handles all the logistics for building and operating an online store, including handling all manufacturing, printing, packaging, payment processing, and shipping for products purchased through the GearLaunch-created online storefronts.

24.     GearLaunch's website also confirms that it provides all customer service for orders made through the GearLaunch-created online storefronts.

25.     On information and belief, GearLaunch leverages a network of production partners located throughout the United States and elsewhere to manufacture and ship products nationwide, including into the State of Missouri.  Mr. Spring confirms in a promotional video on GearLaunch's website (https://www.gearlaunch.com/how-it-works/) that GearLaunch's platform "enable[es] sellers to reach buyers anywhere," and that its flagship fulfillment center in Salt Lake City, Utah is "capable of printing 15,000 products per day, while [its] production network in total can handle upwards of 100,000."

## C.  Defendants' Willful Infringement

26.      In complete disregard of Plaintiffs' intellectual property rights—and without permission or a license—Defendants have launched countless websites and manufactured, promoted, distributed, offered for sale, and sold goods bearing one or more identical, substantially indistinguishable, or confusingly similar imitations of Plaintiffs' Marks since at least February 2021.

27.     Beginning in February 2021, Plaintiffs became aware of Defendants' infringing operations, and sent a notice of trademark infringement to Defendants' legal department.  For example, on February 22, 2021, Plaintiffs found a website launched by Defendants that was selling shirts, hoodies, mugs, and masks bearing Plaintiff's MAKO® logo and trademarks, which have been registered with the U.S. Patent and Trademark Office since 1970.  *See* **Exhibit 3**.

28.     While GearLaunch removed the website identified in **Exhibit 3**, it continued to launch websites for counterfeit products that infringe Plaintiffs' trademarks.  In fact, since February 2022, Plaintiffs have closely monitored Defendants' business activities and sent over 130 separate take-down notices to Defendants concerning countless websites selling products that infringed Plaintiffs' Marks.  *See* **Exhibit 1**.

29.     Despite taking down the websites identified by Plaintiffs and having full knowledge of Plaintiffs' Marks, Defendants refuse to respect Plaintiffs' intellectual property rights. Indeed, on information and belief, Defendants have willfully continued to advertise, market, manufacture, distribute, offer for sale, and sell Infringing Goods at least as recently as of the filing of this Complaint.

30.     For example, on and around March 10 and March 14, 2022, GearLaunch created at least 19 new websites infringing several of Plaintiffs' Marks. In these online storefronts, GearLaunch is once again offering counterfeit goods that currently directly infringe Plaintiffs' TRACKER, TRACKER BOATS, SUN TRACKER, MAKO, TAHOE, RANGER, RANGER BOATS, and ASCEND marks (the "Infringing Goods").[2] *See* **Exhibit 4** (listing the 19 website domains and providing exemplary screenshots of the Infringing Goods).[3] Since Defendants launched the particular websites listed in **Exhibit 4**, Defendants have also continued to launch additional websites selling Infringing Goods that directly infringe Plaintiffs' Marks—necessitating further takedown notices from Plaintiffs.

31.     The current Infringing Goods, like past Infringing Goods, are similar to and compete with goods sold by Plaintiffs and Plaintiffs' licensees, and the parties' respective goods are sold through identical and overlapping channels of trade.

---

[2] As used in this Complaint, the Infringing Goods includes the goods currently infringing Plaintiffs' Marks as well as, on information and belief, past goods that Defendants manufactured, distributed, promoted, offered for sale, and sold that infringed Plaintiffs' Marks.

[3] As of the filing of the Complaint, three websites launched by Defendants through which Defendants recently manufactured, distributed, promoted, offered for sale, and sold Infringing Goods have become inactive. On information and belief, as of at least March 10-14, 2022, Defendants were manufacturing, distributing, promoting, offering for sale, and selling goods that infringed Plaintiffs' Marks. *See* **Exhibit 4**.

32. These current Infringing Goods, like past Infringing Goods, also bear spurious designations that are identical to or indistinguishable from Plaintiffs' Marks. Therefore, the Infringing Goods are counterfeit.

33. All of these current Infringing Goods, like past Infringing Goods, bear designs, color schemes, and/or trademarks that are substantially and confusingly similar to one or more of Plaintiffs' Marks.

34. The current and past Infringing Goods have been offered for sale or are offered for sale and sold on various websites and social media sites, which, on information and belief, are owned, operated, controlled, or registered by, or otherwise affiliated with, Defendants. *See, e.g.*, **Exhibit 4**. For example, each of the 19 websites selling the current Infringing Goods bear the words "Powered by Gearlaunch" at the bottom of the webpage, and the "Support" link directs users to contact GearLaunch customer service for support.

35. Defendants' manufacture, distribution, promotion, offer for sale, and sale of the current Infringing Goods, like past Infringing Goods, use of identical, substantially indistinguishable, and/or confusingly similar imitations of Plaintiffs' Marks are likely to deceive, confuse, and mislead actual and prospective purchasers before, during, and after purchase into believing that the Infringing Goods are manufactured by, licensed by, authorized by, affiliated with, or approved in some other manner by Plaintiffs—which they are not.

36. On information and belief, Defendants are very familiar with Plaintiff's Marks and Plaintiff's intellectual property rights, at a minimum, by virtue of the approximately 113 notices sent by Plaintiffs to Defendants since February 2021. Despite this knowledge, Defendants willfully continued to engage in new advertising, marketing, manufacturing, distributing, offering

for sale, and/or selling the Infringing Goods that have infringed and are currently infringing Plaintiffs' Marks.

37.     By virtue of the continual notice provided by Plaintiffs since February 2021, Defendants were aware or should have been aware that the sale of the Infringing Goods would likely cause confusion among consumers and would dilute Plaintiffs' rights in Plaintiffs' Marks. Indeed, on information and belief, Defendants have knowingly, willfully, intentionally, and maliciously adopted and used substantially indistinguishable and confusingly similar imitations of Plaintiffs' Marks to mislead and deceive consumers into believing they are offered, authorized, or licensed by Plaintiffs, and to free-ride and otherwise trade on the significant goodwill and favorable reputation Plaintiffs have built with consumers in the marketplace.

38.     Defendants' blatant violations of Plaintiffs' intellectual property rights has been in bad faith, with malicious intent, and in knowing disregard to Plaintiffs' rights.

39.     The likelihood of confusion, mistake, and deception engendered by Defendants' misappropriation of Plaintiff's Marks has caused and is causing irreparable harm to the goodwill symbolized by Plaintiffs' Marks and the reputation for quality that they embody.

40.     The likelihood of confusion, mistake, and deception engendered by Defendants' misappropriation of Plaintiffs' Marks is particularly damaging with respect to those persons who perceive a defect or lack of quality in the Infringing Goods.

41.     On information and belief, by virtue of their unlawful conduct, Defendants have made profits and gains to which they are not entitled in law or equity.

42.     On information and belief, Defendants have demonstrated a pattern of disrespect towards intellectual property rights. Indeed, Defendants have faced multiple lawsuits for counterfeiting and infringing well-known and famous marks over the last several years, including:

- *Sanrio Co., Ltd. et al v. GearLaunch, Inc. et al*, Case No. 19-cv-916-RGK-AGR (C.D. Cal. 2019) (alleging counterfeiting and trademark infringement of several of plaintiff's character marks, including Hello Kitty);

- *Mast-Jaegermeister SE v. GearLaunch, Inc. et al*, Case No. 18-cv-6276-PGG (S.D.N.Y. 2018) (alleging counterfeiting and trademark infringement of the Jagermeister word and design marks);

- *Monster Energy Co. v. GearLaunch, Inc.*, Case No. 18-cv-1489-FMO-KK (C.D. Cal. 2018) (alleging counterfeiting and trademark infringement of several Monster Energy word, design, and logo marks);

- *The Regents of the Univ. of Cal. et al v. GearLaunch, Inc. et al*, Case No. 17-cv-2280-DMR (N.D. Cal. 2017) (alleging counterfeiting and trademark infringement of trademarks owned by 26 major universities); and

- *H-D USA LLC et al v. GearLaunch, Inc. et al*, Case No. 16-cv-1167-LA (E.D. Wisc. 2016) (alleging counterfeiting and trademark infringement of various Harley-Davidson word and logo marks).

43.    Despite the numerous trademark and counterfeiting suits initiated against Defendants, Defendants have refused to alter their business practices and have continued to advertise, promote, manufacture, offer for sale, process, and sell counterfeit good that infringe on well-known and long-established intellectual property rights.

44.    On information and belief, Mr. Spring, as CEO, is the principal and/or supervisory employee at GearLaunch.  Accordingly, Mr. Spring has the right and ability to supervise or control GearLaunch's continuous and brazen counterfeiting and infringing operations.

11

45.     On information and belief, as GearLaunch CEO, Mr. Spring has a direct financial interest in permitting, encouraging, empowering, and continuing the counterfeiting and infringing activity described in this Complaint.

46.     Further, based on the consistent notice provided by Plaintiffs to GearLaunch since at least February 2021, Mr. Spring had knowledge or reason to know of the infringing activity, and still directed and contributed to GearLaunch's ongoing counterfeiting and infringement operations. Accordingly, on information and belief, Mr. Spring knowingly authorized, directed, and/or substantially participated in the manufacture, distribution, offer for sale, and/or sale of the Infringing Goods.

47.     This Court should immediately halt and enjoin Defendants' brazen and willful infringement of Plaintiffs' intellectual property rights.

## COUNT ONE
### FEDERAL COUNTERFEITING
### (AS TO ALL DEFENDANTS)

48.     Plaintiffs repeat and re-allege each allegation in the foregoing paragraphs as if fully set forth herein.

49.     Defendants have used and are currently using in commerce spurious marks that are counterfeits of, identical to, or substantially indistinguishable from, Plaintiffs' Marks in connection to goods identical to those identified in Plaintiffs' federal registrations.

50.     Defendants have used such marks knowing that they are counterfeit in connection with the promotion and/or sale of goods identical to Plaintiffs' goods without the consent or authorization of Plaintiffs, in a manner likely to cause confusion, to cause mistake, or to deceive consumers as the source or origin of the goods.  Accordingly, Defendants actions constitute counterfeiting under 15 U.S.C. § 1114 and 1116(d).

51. Defendants unauthorized use of Plaintiffs' Marks that are federally registered is likely to mislead and cause consumers and/or the general public to falsely believe that Defendants' Infringing Goods are manufactured or distributed by Plaintiffs, or are associated or connected with Plaintiffs, or have the authorization, sponsorship, endorsement, or approval of Plaintiffs.

52. Plaintiffs' consistent notices served to Defendants, and Defendants' unrelenting infringing activities thereafter, demonstrate an intentional, willful, and malicious intent to counterfeit Plaintiff's Marks that are federally registered. Pursuant to 15 U.S.C. § 1117(b), Plaintiffs are entitled to recover treble profits or damages, whichever amount is greater, together with reasonable attorneys' fees.

53. Defendants are directly liable for the actions described herein.

54. In addition, upon information and belief, Defendants supply services to their users knowing, or with reason to know, that its users utilize such services for the purposes of offering for sale the Infringing Goods. Defendants nevertheless knowingly and materially assist in and/or contribute to the manufacture, marketing, advertising, promotion, offering for sale, distribution, and sales of infringing products, including, *inter alia*, by failing to cease manufacture, marketing, advertising, promotion, offering for sale, distribution, and sales of the Infringing Goods of which they are aware or should be aware. Indeed, Defendants continue to operate websites, social media pages, and social media advertisements through which the Infringing Goods are marketed, advertised, promoted, offered for sale, distributed, and/or sold.

55. Accordingly, Defendants are also vicariously and/or contributorily liable for the actions described herein.

56. Because Defendants have caused, and are likely to continue causing, substantial injury to the public and to Plaintiffs for which Plaintiffs have no adequate remedy at law, and

because this is an exceptional case, Plaintiffs are entitled to statutory damages and reasonable attorneys' fees under 15 U.S.C. § 1117(c), as well as seizure of the Infringing Goods under 15 U.S.C. § 1116.

## COUNT TWO
### FEDERAL COUNTERFEITING
### (AS TO DEFENDANT SPRING IN HIS PERSONAL CAPACITY)

57.     Plaintiffs repeat and re-allege each allegation in the foregoing paragraphs as if fully set forth herein.

58.     On information and belief, Defendant Spring is the founder and CEO of GearLaunch.

59.     On information and belief, as founder and CEO, Defendant Spring developed or directed the development of GearLaunch's online platform, marketing strategy, manufacturing processes and network, and overall business plan and strategy.  Accordingly, Defendant Spring is knowledgeable about all aspects of GearLaunch's business operations and personally directs the execution of GearLaunch's business plans and strategies.

60.     On information and belief, as founder and CEO, Defendant Spring is aware of the multiple federal lawsuits filed against him and GearLaunch alleging counterfeiting and trademark infringement.  Defendant Spring, on information and belief, is also aware of Plaintiffs' continual take-down notices sent to Defendants since at least February 2021.

61.     On information and belief, despite Defendant Spring's knowledge of Plaintiffs' take-down notices since February 2021 for counterfeit products bearing Plaintiffs' Marks and Defendant GearLaunch's propensity to manufacture, market, advertise, promote, offer for sale, distribute, and sell counterfeit products that infringe federally registered trademarks, Defendant Spring has failed to direct himself or any GearLaunch employee to alter GearLaunch's business platform to prevent the repeated counterfeiting of Plaintiffs' Marks that are federally registered.

62.     Accordingly, as founder and CEO who had knowledge of GearLaunch's counterfeiting activities, Defendant Spring actively and knowingly enabled, caused, and continues to cause the counterfeiting of Plaintiffs' Marks that are federally registered.

63.     Defendant Spring directed, controlled, ratified, participated in, was the moving conscious force behind, and/or was willfully blind to GearLaunch's past and present counterfeiting of Plaintiffs' Marks that are federally registered.

64.     Defendant Spring's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' Marks that are federally registered to cause Plaintiffs' great and irreparable harm.

65.     Accordingly, Defendant Spring is personally liable for the counterfeiting actions described herein.

66.     Because Defendant Spring has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs for which Plaintiffs have no adequate remedy at law, and because this is an exceptional case, Plaintiffs are entitled to statutory damages and reasonable attorneys' fees under 15 U.S.C. § 1117(c) from Defendant Spring personally, as well as seizure of the Infringing Goods under 15 U.S.C. § 1116.

## COUNT THREE
### FEDERAL TRADEMARK INFRINGEMENT
#### (AS TO ALL DEFENDANTS)

67.     Plaintiffs repeat and re-allege each allegation in the foregoing paragraphs as if fully set forth herein.

68.     Defendants have used and are currently using in commerce marks confusingly similar to Plaintiffs' Marks that are federally registered in violation of 15 U.S.C. § 1114.

69.     Defendants' use of confusingly similar imitations of Plaintiffs' Marks that are federally registered is likely to cause confusion, deception, and mistake by creating the false and

misleading impression that the Infringing Goods are manufactured or distributed by Plaintiffs, or are associated or connected with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs.

70. Defendants' actions have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among members of the trade and the public, and additionally, injury to Plaintiffs' goodwill and reputations as symbolized by Plaintiffs' Marks that are federally registered, for which Plaintiffs have no adequate remedy at law.

71. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' Marks that are federally registered to cause Plaintiffs' great and irreparable harm.

72. Defendants are directly liable for the actions described herein.

73. In addition, upon information and belief, Defendants supply services to their users knowing, or with reason to know, that its users utilize such services for the purposes of offering for sale the Infringing Goods. Defendants nevertheless knowingly and materially assist in and/or contribute to the manufacture, marketing, advertising, promotion, offering for sale, distribution, and sales of infringing products, including, *inter alia*, by failing to cease manufacture, marketing, advertising, promotion, offering for sale, distribution, and sales of the Infringing Goods of which they are aware or should be aware. Indeed, Defendants continue to operate websites, social media pages, and social media advertisements through which the Infringing Goods are marketed, advertised, promoted, offered for sale, distributed, and/or sold.

74. Accordingly, Defendants are also vicariously and/or contributorily liable for the actions described herein.

75. Defendants' blatant and systematic conduct is causing, and is likely to continue to cause, injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover their actual damages and/or an award of Defendants' profits, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117. Any such damages and/or profits awarded should be trebled pursuant to 15 U.S.C. § 1117(a).

**COUNT FOUR**
**FEDERAL TRADEMARK INFRINGEMENT**
**(AS TO DEFENDANT SPRING IN HIS PERSONAL CAPACITY)**

76. Plaintiffs repeat and re-allege each allegation in the foregoing paragraphs as if fully set forth herein.

77. On information and belief, Defendant Spring is the founder and CEO of GearLaunch.

78. On information and belief, as founder and CEO, Defendant Spring developed or directed the development of GearLaunch's online platform, marketing strategy, manufacturing processes and network, and overall business plan and strategy. Accordingly, Defendant Spring is knowledgeable about all aspects of GearLaunch's business operations and personally directs the execution of GearLaunch's business plans and strategies.

79. On information and belief, as founder and CEO, Defendant Spring is aware of the multiple federal lawsuits filed against him and GearLaunch alleging counterfeiting and trademark infringement. Defendant Spring, on information and belief, is also aware of Plaintiffs' continual take-down notices sent to Defendants since at least February 2021.

80. On information and belief, despite Defendant Spring's knowledge of Plaintiffs' take-down notices since February 2021 for products infringing Plaintiffs' Marks and Defendant GearLaunch's propensity to manufacture, market, advertise, promote, offer for sale, distribute, and sell products that infringe federally registered trademarks, Defendant Spring has failed to direct

himself or any GearLaunch employee to alter GearLaunch's business platform to prevent the infringement of Plaintiffs' Marks that are federally registered.

81. Accordingly, as founder and CEO who had knowledge of GearLaunch's infringing activities, Defendant Spring actively and knowingly enabled, caused, and continues to cause the infringement of Plaintiffs' Marks that are federally registered.

82. Defendant Spring directed, controlled, ratified, participated in, was the moving conscious force behind, and/or was willfully blind to the GearLaunch's past and present infringement of Plaintiffs' Marks that are federally registered.

83. Defendant Spring's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' Marks that are federally registered to cause Plaintiffs great and irreparable harm.

84. Accordingly, Defendant Spring is personally liable for the infringing actions described herein.

85. Defendant Spring's blatant and systematic conduct is causing, and is likely to continue to cause, injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover their actual damages and/or an award from Defendant Spring personally under 15 U.S.C. §§ 1114, 1116 and 1117. Any such damages and/or profits awarded should be trebled pursuant to 15 U.S.C. § 1117(a).

## COUNT FIVE
### FEDERAL UNFAIR COMPETITION, FALSE REPRESENTATION, AND FALSE DESIGNATION OF ORIGIN
### (AS TO ALL DEFENDANTS)

86. Plaintiffs repeat and re-allege each allegation in the foregoing paragraphs as if fully set forth herein.

87.    Defendants' use and confusingly similar imitations of Plaintiffs' Marks that are federally registered has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the Infringing Goods are manufactured or distributed by Plaintiffs, or are affiliated, connected, or associated with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs.

88.    Defendants have used false designations of origin, false or misleading descriptions of fact, and false or misleading representations of fact in violation of 15 U.S.C. 1125(a). Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among members of the trade and public, and, additionally, injury to Plaintiffs' goodwill and reputation for which Plaintiffs have no adequate remedy at law.

89.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' Marks that are federally registered to the great and irreparable injury of Plaintiffs.

90.    Defendants are directly liable for the actions described herein.

91.    In addition, upon information and belief, Defendants supply services to their users knowing, or with reason to know, that its users utilize such services for the purposes of offering for sale the Infringing Goods.  Defendants nevertheless knowingly and materially assist in and/or contribute to the manufacture, marketing, advertising, promotion, offering for sale, distribution, and sales of infringing products, including, *inter alia*, by failing to cease manufacture, marketing, advertising, promotion, offering for sale, distribution, and sales of the Infringing Goods of which they are aware or should be aware.  Indeed, Defendants continue to operate websites, social media pages, and social media advertisements through which the Infringing Goods are marketed, advertised, promoted, offered for sale, distributed, and/or sold.

92.    Accordingly, Defendants are also vicariously and/or contributorily liable for the actions described herein.

93.    Because Defendants have caused, and are likely to continue causing, substantial injury to the public and to Plaintiffs, and because this is an exceptional case, Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT SIX
### TRADEMARK DILUTION
### (AS TO ALL DEFENDANTS)

94.    Plaintiffs repeat and re-allege each allegation in the foregoing paragraphs as if fully set forth herein.

95.    Plaintiffs have invested and engaged in extensive nationwide advertising, promotion, and use of Plaintiff's Marks.  Across their many years in the marketplace, Plaintiffs have generated significant revenue for sales of goods and services bearing such marks.

96.    Plaintiffs' Marks are recognized nationwide as leading products in the outdoors and boating markets. This extensive and frequent attention and commercial success has had a substantial impact on the public and has long created an association in the minds of consumers between Plaintiffs and Plaintiffs' Marks, such that these marks are famous and were famous nationwide before Defendants commenced their unauthorized use of those marks. In addition, apart from the nationwide recognition, Defendants were notified by Plaintiffs countless times from February 2021 onward that they were activating and operating websites to advertise, promote, manufacture, offer for sale, process, and sell goods that infringed Plaintiffs' famous marks.

97.    Despite the famous nature of Plaintiffs' Marks, and Defendants' notice of prior infringement issues for the same, Defendants knowingly and willfully took actions and are

currently taking actions, as described herein, which are likely to cause dilution by tarnishment of the distinctive quality of those trademarks in violation of 15 U.S.C. § 1125(c).

98.  Defendants are directly liable for the actions described herein.

99.  In addition, upon information and belief, Defendants supply services to their users knowing, or with reason to know, that its users utilize such services for the purposes of offering for sale the Infringing Goods. Defendants nevertheless knowingly and materially assist in and/or contribute to the manufacture, marketing, advertising, promotion, offering for sale, distribution, and sales of infringing products, including, *inter alia*, by failing to cease manufacture, marketing, advertising, promotion, offering for sale, distribution, and sales of the Infringing Goods of which they are aware or should be aware. Indeed, Defendants continue to operate websites, social media pages, and social media advertisements through which the Infringing Goods are marketed, advertised, promoted, offered for sale, distributed, and/or sold.

100.  Accordingly, Defendants are also vicariously and/or contributorily liable for the actions described herein.

101.  Defendants' systematic disregarding of Plaintiffs' intellectual property rights has at all times relevant to this action been willful.

102.  As a direct and proximate result of Defendants' actions as alleged herein, Plaintiffs have been and will continue to be damaged and irreparably harmed. Plaintiffs have no adequate remedy at law.

## COUNT SEVEN
### MISSOURI STATE TRADEMARK DILUTION
### (AS TO ALL DEFENDANTS)

103.  Plaintiffs repeat and re-allege each allegation in the foregoing paragraphs as if fully set forth herein.

104.     Plaintiffs have invested and engaged in extensive nationwide advertising, promotion, and use of Plaintiffs' Marks, including within the State of Missouri. Across its many years in the marketplace, Plaintiffs have generated significant revenue for sales of goods and services bearing such marks, including sales completed in the State of Missouri. Plaintiffs have adopted and used Plaintiffs' Marks to identify goods made or sold by Plaintiffs and to distinguish them from goods made or sold by others. Accordingly, Plaintiffs are the owner of Plaintiffs' Marks, which are strong, distinctive, valid, and enforceable trademarks at common law.

105.     Defendants have used and are currently using, without the consent of Plaintiffs, counterfeit and/or colorable imitations of Plaintiffs' Marks.

106.     Defendants' willful and continued use of Plaintiffs' Marks is likely to injure the business reputation of Plaintiffs and/or dilute the distinctive quality of its trademarks.

107.     Defendants' actions and business practices described herein violate Missouri's anti-dilution statute Mo. Rev. Stat. § 417.061. Accordingly, Plaintiffs are entitled to injunctive relief against Defendants, restraining Defendants from further acts of infringement of Plaintiffs' common law trademark rights.

108.     In addition, Defendants' actions and business practices described herein with regard to the BASS PRO SHOPS mark, registered by Plaintiffs in the State of Missouri pursuant to Mo. Rev. Stat. § 417.026 (*see* **Exhibit 2**), violate Missouri's anti-counterfeit and anti-trademark infringement statute Mo. Rev. Stat. § 417.056. Accordingly, Plaintiffs are entitled to collect damages in the form of all profits derived by Defendants through the sale of goods infringing the BASS PRO SHOPS mark and all damages suffered by Plaintiffs because of Defendants' willful and bad faith business practices.

<u>**COUNT EIGHT**</u>
**COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

**(AS TO ALL DEFENDANTS)**

109.     Plaintiffs repeat and re-allege each allegation in the foregoing paragraphs as if fully set forth herein.  This claim is a substantial and related claim to Plaintiffs' federal claims.

110.     Defendants' nationwide promotion, manufacturing, offers for sale, and sale of Infringing Goods constitute trademark infringement and unfair competition in violation of the common law of several states, including the State of Missouri.

111.     Defendants' acts have created, and unless restrained by this Court, will continue to create a likelihood of confusion and deception of the consuming public, causing irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

112.     On information and belief, and via the approximately 113 notices sent by Plaintiff to Defendant since February 2021, Defendants have acted with full knowledge of Plaintiffs' use of, and statutory and common law rights to, Plaintiffs' Marks and without regard to the likelihood of confusion and deception of the public created by those activities.

113.     Defendants are directly liable for the actions described herein.

114.     In addition, upon information and belief, Defendants supply services to their users knowing, or with reason to know, that its users utilize such services for the purposes of offering for sale the Infringing Goods.  Defendants nevertheless knowingly and materially assist in and/or contribute to the manufacture, marketing, advertising, promotion, offering for sale, distribution, and sales of infringing products, including, *inter alia*, by failing to cease manufacture, marketing, advertising, promotion, offering for sale, distribution, and sales of the Infringing Goods of which they are aware or should be aware.  Indeed, Defendants continue to operate websites, social media pages, and social media advertisements through which the Infringing Goods are marketed, advertised, promoted, offered for sale, distributed, and/or sold.

115. Accordingly, Defendants are also vicariously and/or contributorily liable for the actions described herein.

116. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs' Marks to the great and irreparable injury of Plaintiffs.

117. As a result of Defendants' acts, Plaintiffs have been damaged in an amount not as yet determined or ascertainable. At a minimum, however, Plaintiffs are entitled to injunctive relief, an accounting of Defendants' profits, actual damages, and punitive damages at common law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests that this Court enter judgment in their favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

1. An injunction preliminarily and permanently enjoining Defendants and their employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, retailers, and all persons in active concert or participation with any of them from:

      i.      manufacturing, distributing, advertising, marketing, offering for sale, or selling the Infringing Goods identified in **Exhibit 4** or any other similar goods;

      ii.     using Plaintiffs' Marks, as seen in **Exhibits 1-2**, or any other copy, reproduction, colorable imitation, or simulation of Plaintiffs' Marks on or in connection with goods;

      iii.    using any trademark, name, logo, design, or source designation of any kind on or in connection with goods or services that is a copy, reproduction,

colorable imitation, or simulation of, or confusingly similar to any of Plaintiffs' trademarks, trade dresses, names, or logos;

iv.      using any trademark, name, logo, design, or source designation of any kind on or in connection with goods that are likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by Plaintiffs, or are in any way connected or related to Plaintiffs;

v.      using any trademark, name, logo, design, or source designation of any kind on or in connection with goods that dilutes, or are likely to dilute, the distinctiveness of any of Plaintiffs' Marks, as seen in **Exhibits 1-2**;

vi.      passing off, palming off, or assisting in passing off or palming off goods as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

vii.      effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in paragraphs (i)-(vii) above.

2.      That Defendants be ordered to cease offering for sale, marketing, promoting, and selling, and to recall all products sold under or bearing any of Plaintiffs' Marks, or any identical, substantially indistinguishable, or confusingly similar imitations of any of Plaintiffs' Marks, that are in Defendants' possession or have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's Order as it relates to injunctive relief against Defendants.

3. That Defendants be ordered to deliver up for impoundment and for destruction, all clothing, apparel, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional materials, stationery, or other materials in the possession, custody, or under the control of Defendants that are found to adopt, infringe, or dilute any of Plaintiffs' Marks, as seen in **Exhibits 1-2**, or that otherwise unfairly compete with Plaintiffs and their products.

4. That Defendants be compelled to account to Plaintiffs for any and all profits derived by Defendants from the sale or distribution of the Infringing Goods.

5. That Defendant Spring be found personally liable for the counterfeiting and infringement of any of Plaintiffs' Marks.

6. That Plaintiffs be awarded all damages caused by the acts forming the basis of this Complaint.

7. That based on Defendants systematic, knowing, willful, and intentional use of identical, substantially indistinguishable, or confusingly similar imitations of any of Plaintiffs' Marks, the damages awarded be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a).

8. That Defendants be required to pay Plaintiffs the costs and reasonable attorneys' fees incurred by Plaintiffs in this action pursuant to 15 U.S.C. § 1117(a);

9. That Plaintiffs be awarded statutory damages under 14 U.S.C. § 1117(c) for each transaction carried out by Defendants using a counterfeit mark within the meaning of 15 U.S.C. 1116(d).

10. That based on Defendants' systematic, willful, and deliberate infringement and/or dilution of Plaintiffs' Marks, and to deter such conduct in the future, Plaintiffs be awarded punitive damages.

11.    That Plaintiffs be awarded pre-judgment and post-judgement interest on all monetary awards.

12.    That Plaintiffs have such other and further relief as the Court may deem just.

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

Dated:  April 22, 2022                                   Respectfully submitted,

By   /s/ Patrick A. Lujin_____

B. Trent Webb (MO # 40778)
Patrick A. Lujin (MO #41392)
Clinton G. Newton (MO #46054)
Maxwell C. McGraw (MO #70237)
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816.474.6550
Facsimile: 816.721.5547
bwebb@shb.com
plujin@shb.com
cnewton@shb.com
mmcgraw@shb.com

**ATTORNEYS FOR PLAINTIFFS WHITE RIVER MARINE GROUP, L.L.C. AND BASS PRO INTELLECTUAL PROPERTY, L.L.C.**